No. 20-2351

In the
# United States Court of Appeals
for the Eighth Circuit

———————————

DANIEL LEWIS LEE,
Appellant,

v.

UNITED STATES OF AMERICA,
Appellee.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
District Court No. 4:97-CV-243

———————————

**BRIEF FOR THE UNITED STATES IN OPPOSITION TO LEE'S
APPLICATION FOR A CERTIFICATE OF APPEALABILITY OR
AUTHORIZATION TO FILE A SUCCESSIVE § 2255 MOTION**

———————————

CODY HILAND
United States Attorney
Eastern District of Arkansas

JONATHAN D. ROSS
Assistant United States Attorney
Eastern District of Arkansas

BRIAN A. RABBITT
Acting Assistant Attorney General

JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

STATEMENT..................................................................................................... 2

    I.     The Murders and Investigation..................................................... 3

    II.    Trial.............................................................................................. 7

    III.   Section 2255 Motion.................................................................. 10

    IV.   Lee's 2018 Rule 60 Motion ...................................................... 11

    V.    Lee's 2020 Rule 60 Motion ...................................................... 15

ARGUMENT ................................................................................................... 18

    I.     Legal Standards ......................................................................... 19

         A.    Certificate of Appealability............................................. 19

         B.    Gatekeeping Restrictions on Successive § 2255
              Motions ............................................................................ 19

    II.    No Reasonable Jurist Would Disagree That Lee Failed to
         Allege or Demonstrate a Defect in the Integrity of His
         § 2255 Proceedings That Could Support Relief Under Rule
         60 and Avoid the Restrictions on Second or Successive
         § 2255 Motions ......................................................................... 21

    III.   Lee Is Not Entitled to Certification to File a Second or
         Successive § 2255 Motion.......................................................... 24

CONCLUSION................................................................................................. 27

CERTIFICATE OF SERVICE ........................................................................ 28

Appellate Case: 20-2351    Page: 2    Date Filed: 07/10/2020 Entry ID: 4932531

# INTRODUCTION

This is a capital murder case with a long history. Defendant Daniel Lewis Lee has obtained extensive review of his conviction and sentence by both this Court and the district court. Among other things, he collaterally attacked his conviction and sentence on numerous grounds in a motion for relief under 28 U.S.C. § 2255, the district court carefully evaluated and denied the motion in an exhaustive opinion, and this Court affirmed. The government is now prepared to proceed with Lee's execution on July 13, 2020.

The district court correctly denied Lee's recent motion for relief from judgment under Federal Rule of Civil Procedure 60, and no other jurist could reasonably conclude otherwise. Lee identifies no defect in the integrity of his § 2255 proceedings that could permit him to obtain relief under Rule 60 without proceeding through the gatekeeping provisions in 28 U.S.C. § 2255(h) for second or successive § 2255 motions. To the contrary, Lee's Rule 60 is a thinly veiled attempt to raise new claims attacking his conviction based on allegedly newly discovered evidence without first satisfying the requirements for successive § 2255 motions based on newly discovered evidence. Lee now attempts to satisfy those requirements but cannot. The allegedly newly discovered evidence does not in the least undermine the overwhelming evidence that Lee committed the murders in this case.

1

# STATEMENT

The procedural history of this capital murder case is lengthy and was set forth most recently in this Court in the government's opening brief in its appeal from the district court order staying Lee's execution, which had been set for December 9, 2019. Opening Br. 3-8, *United States v. Lee*, No. 19-3618 (filed Dec. 20, 2020). Since that time, and after oral argument in that appeal on January 16, 2020, Lee filed the motion presently at issue (Dkt. 1363), a motion for relief from judgment under Federal Rule of Civil Procedure 60, which by the government's count is Lee's fourth Rule 60 motion. As discussed below, that motion, filed on January 29, 2020, seeks relief from judgment based on information that Lee apparently obtained in December 2018 and in either July or August 2019.[1]

More has taken place in this case after Lee filed his January 2020 motion. The district court in the Southern District of Indiana denied Lee's habeas petition under 28 U.S.C. § 2241. *Lee v. Warden*, No. 2:19-CV-468 (S.D. Ind.) (Mar. 20, 2020). The D.C. Circuit vacated the preliminary injunction in litigation by Lee challenging the government's execution protocol. *In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020). This

---

[1] "Dkt." refers to district court docket entries. "Tr." refers to the consecutively paginated trial transcript.

2

Court vacated the district court's stay order. *United States v. Lee*, 960 F.3d 1023 (8th Cir. 2020). The United States rescheduled Lee's execution to take place on July 13, 2020. *See* Dkt. 1379. And the Supreme Court granted expedited consideration of Lee's petition for certiorari in the execution-protocol litigation and denied that petition, along with Lee's stay application. *Bourgeois v. Barr*, No. 19-1348, 2020 WL 3492763 (June 29, 2020).

The Arkansas district court subsequently denied the Rule 60 motion at issue in this application (Dkt. 1403) and also another Rule 60 motion that Lee had filed in December 2019 (*see* Dkt. 1404), which was the motion that had precipitated the stay order vacated by this Court on June 1, 2020. This morning, the district court also denied (Dkt. 1425) a motion by Lee arguing that the July 13, 2020, execution date is null and void, and a motion asking the court to postpone the execution until March 19, 2021. Dkt. 1425. A motion by Lee seeking DNA testing remains pending. Dkt. 1387.

## I.     The Murders and Investigation

In connection with efforts to establish an independent nation of white supremacists in the Pacific Northwest, Lee and co-defendant Chevie Kehoe went to the Arkansas home of gun dealer William Mueller in January 1996, expecting to find valuable property, and after taking weapons worth about $30,000 and $50,000 in cash and coins, murdered Mueller and his wife Nancy

Appellate Case: 20-2351     Page: 5     Date Filed: 07/10/2020 Entry ID: 4932531

and their eight-year-old daughter Sarah Powell. *United States v. Lee*, 374 F.3d 637, 641 (8th Cir. 2004), *cert. denied*, 545 U.S. 1141 (2005); *United States v. Lee*, No. 97-CR-243, 2008 WL 4079315, at *4 (E.D. Ark. Aug. 28, 2008). Lee and Kehoe shot the three victims with a stun gun, placed plastic trash bags over their heads, and sealed the bags with duct tape to asphyxiate them. *Id.* at *4 & n.52. They taped rocks to the bodies and threw them into the nearby Illinois Bayou. *Lee*, 374 F.3d at 641-42.

Arkansas law enforcement authorities initially had limited leads after the Muellers went missing and focused on local suspects, not culprits from the Pacific Northwest. For example, "[l]aw enforcement attention focused on Paul Humphrey" after Nancy Mueller's brother told local authorities on February 22, 1996, about a month after the Muellers went missing, that Humphrey possessed the title documents for a Jeep and trailer owned by William Mueller (which had been found abandoned in a nearby rural area) and that he (Nancy Mueller's brother) "had previously seen those documents, unsigned, in the Mueller residence on February 2." *United States v. Humphrey*, 140 F.3d 762, 763 (8th Cir. 1998). Humphrey, who lived in Russellville, Arkansas, and was friends with the Muellers, admitted that he possessed the documents and promised to produce them but was evasive and repeatedly failed to turn them over to law enforcement. *Id.* Humphrey and William Mueller had devised a

4

plan—based on an interpretation of the Seventh Amendment they had learned at a seminar—to take the titles to their respective vehicles "from the state out of its hands and back into our hands" by exchanging titles for "pieces of silver." Tr. 6143, 6154-62. Humphrey felt that turning over the documents to law enforcement would defeat that goal and make the government the vehicle's owner. Tr. 6167-69. According to Humphrey, Mueller's landlord had sent him the documents in the mail after the Muellers had gone missing. Tr. 6153, 6176.

After the bodies of the Muellers and Sarah Powell were found in the Illinois Bayou on June 28, 1996, Humphrey finally turned over the documents, *Humphrey*, 140 F.3d at 763, and investigators concluded that William Mueller's signature on the documents was possibly forged, Tr. 5880-81. Investigators obtained "a warrant for Humphrey's home and the surrounding buildings to search for blood, duct tape, plastic bags, carpet and clothing fibers, firearms and precious metals believed to have been taken from the abandoned Jeep and trailer, and other items related to the deaths of the Muellers and Sarah Powell." *Humphrey*, 140 F.3d at 763-64. The only evidence related to the Muellers found in the search was a product brochure about "Blue-Green Algae" that had Nancy Mueller's name and address on it. Tr. 5893.

5

In the meantime, Lee and Kehoe remained in Spokane, where they both individually confessed to Kehoe's mother (Gloria Kehoe) about murdering the Muellers. *Lee*, 2008 WL 4079315, at *4. Lee also told an acquaintance in Spokane (James Wanker) that he had taken a trip "down south" and that some people "had fucked with him and so he wrapped them up, taped them, and [threw] them in the swamp." Tr. 4082-83; *see also id.* at 4093 (similar statements to Wanker's wife). After learning that a friend was arrested in December 1996 in possession of one of Mueller's guns and was questioned by an ATF agent about whether he had purchased the gun from Kehoe, Lee and Kehoe panicked; they split up and fled Spokane. Tr. 2794, 2799, 4980. Lee went to Oklahoma while Kehoe traveled around the country with his brother (Cheyne Kehoe) selling Mueller's firearms, eventually confessing to his brother that he and Lee had murdered the Muellers. *Lee*, 2008 WL 4079315, at *5-*6.

Kehoe's brother (Cheyne Kehoe) and mother (Gloria Kehoe) eventually came to fear for their lives and contacted federal authorities to cooperate and provide information. *Id.* at *6-*7. Cheyne Kehoe disclosed Chevie Kehoe's confession and turned over Kehoe's truck, which an FBI forensic chemist later examined, determining that paint on the truck was consistent with and very similar to paint chips found on duct tape removed from the bodies of the Mueller family. *Id.* at *6. Investigators later apprehended Kehoe and found in

6

his possession property belonging to William Mueller and a key that opened the handcuffs found on Mueller's dead body. Tr. 3218-19, 3265-67, 3275-3311, 3565; *see United States v. Kehoe*, 310 F.3d 579, 585 (8th Cir. 2002). Gloria Kehoe provided information about storage units used by Chevie Kehoe in Montana and Idaho, where investigators found, among other things, property stolen from the Muellers, including display cases that William Mueller had used at gun shows. Tr. 2479, 3378-3403, 3479, 3610-28, 3650. Lee's and Kehoe's fingerprints were recovered from one of the display cases from the Idaho storage unit. Tr. 3489-90, 3710.

## II.    Trial

Following a two-month trial, a jury convicted Lee and Kehoe of conducting and conspiring to conduct a racketeering enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) and § 1962(d), and three counts of capital murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). *See Lee*, 2008 WL 4079315, at *2. The evidence "overwhelmingly supported the jury's finding of guilt." *Id.* at *25; *see also id.* at *7 (discussing the strength of the evidence).

The evidence included, but was not limited to, evidence that Kehoe and Lee went on a trip together for two or three weeks in January 1996, claiming they were going to Idaho to build a barn. Tr. 2778-79. Testimony from Lee's

own mother established that Kehoe and Lee instead traveled south, visiting her in Yukon, Oklahoma, Tr. 2617-20, which is about a 320-mile drive from Tilly, Arkansas, where the Muellers lived, and they left her house at around 6 p.m. on January 10, 1996, Tr. 2618-19, 2633, the day before the Muellers went missing, *see* Dkt. 1367, at 58-59 (cataloguing some of the evidence establishing that the Muellers went missing on January 11, 1996). According to Lee's mother, when Lee and Kehoe left her house in Oklahoma on January 10, 1996, they were "short on cash," and she even had to lend them about $40 despite her "very limited income." Tr. 2619-20. But the evidence established that when Kehoe and Lee returned to Spokane two or three days after the Muellers went missing, they were flush with cash and possessed property stolen from the Muellers. *See, e.g.*, Tr. 2779-82, 2892-96, 2900-01, 2916, 3710.

Lee specifically possessed about $1,500 in cash, as well as a unique firearm. Tr. 2779-80. Lee's roommate testified about the firearm and specific modifications he observed on the firearm. Tr. 2780. Another witness testified that he had modified a firearm for Mueller according to Mueller's personal specifications, and the witness had put together a reproduction of the modified firearm for use at trial. Tr. 2559-61. The modified firearm matched the description by Lee's roommate, and when shown the reproduced firearm, Lee's roommate testified that it matched the firearm that he saw in Lee's

8

Appellate Case: 20-2351    Page: 10    Date Filed: 07/10/2020 Entry ID: 4932531

possessions upon Lee's return to Spokane in January 1996. Tr. 2780-81. Consistent with the roommate's testimony, Chevie Kehoe's mother, Gloria Kehoe, testified that Lee confessed to her that he participated in the murders with Kehoe and that Kehoe had given him $1,000 and a rifle for his participation. Tr. 4975.

Gloria Kehoe testified that Chevie Kehoe also confessed to her that he and Lee had murdered the Muellers. Tr. 4971-75; *Lee*, 2008 WL 4079315, at *4. An acquaintance of Lee's in Spokane (James Wanker) testified about statements by Lee that he had taken a trip "down south" and that some people "had fucked with him and so he wrapped them up, taped them, and [threw] them in the swamp," Tr. 4082-83; *see also id.* at 4093 (similar statements to Wanker's wife), which was consistent with the location of the Murders (the South, namely Arkansas), the location where the bodies were found (the Illinois Bayou, akin to a swamp), and the state of the bodies when they were found (with plastic bags wrapped around their heads with duct tape), *see Lee*, 2009 WL 4079315, at *5.

After the guilt phase of the trial, separate sentencing hearings were held for Kehoe and Lee to determine whether they should receive the death sentence. The jury returned verdicts recommending life imprisonment for Kehoe and death for Lee. Lee accordingly was sentenced to death.

9

## III. Section 2255 Motion

After Lee's conviction became final on direct review, he filed a motion for collateral relief under 28 U.S.C. § 2255. Dkt. 1118. As relevant here, Lee's motion asserted what he called a "Case for Actual Innocence," where he claimed that there were "many aspects of this case" that were "disturbing and strongly suggest[ed]" that he was innocent. Dkt. 1118, at 6. In a footnote, Lee "request[ed] that the Government review its files and the files of its investigating agencies for any information favorable to the defense bearing on guilt or punishment." Dkt. 1118, at 7 n.3. Lee stated that he would amend his § 2255 to include a *Brady* claim if the government were to turn over any *Brady* material. *Id.* The government responded that Lee's claim of actual innocence "consist[ed] of barebones claim allegations without discussion" of applicable law or facts, and that even assuming a free-standing actual-innocence claim were a cognizable basis for collateral relief, "[t]he evidence of Lee's guilt was overwhelming, and none of the supposed gaps and inconsistencies identified by Lee casts any new doubts on the convictions." Dkt. 1126, at 30.

In an entirely separate part of Lee's § 2255 motion, he asserted a claim that he received ineffective assistance of counsel because his lawyers failed to object to a court order that prohibited Lee (but not his lawyers) from accessing discovery materials and the names of witnesses. Dkt. 1118, at 18-19; *see Lee*,

Appellate Case: 20-2351     Page: 12     Date Filed: 07/10/2020 Entry ID: 4932531

374 F.3d at 652 (rejecting challenge to court order on plain-error review). In response, the government explained, by way of background, that the government had turned over a "huge amount" of discovery months before trial and Lee had "sent copies of [some] material to his associates in an effort to have witnesses harmed." Dkt. 1126, at 45 & n.16. The government further explained, in a footnote, that "[t]he vast majority of the material [was] *Jencks* material" and only a "small amount of the material was Rule 16 discovery and *Brady* material." Dkt. 1126, at 45 n.16. The government argued that Lee's lawyers did not perform deficiently by failing to object to the court order because "[a]s practically all the materials were *Jencks* materials, had Lee's trial attorney objected to any limitations on providing Lee copies, the government could have provided *Jencks* material at the time the statute directs, *i.e.*, after the witness completed his direct examination," and "[t]his would have crippled the ability of defense attorneys to timely prepare for trial." Dkt. 1126, at 45.

The district court denied Lee's § 2255 motion. *United States v. Lee*, No. 97-CR-243, 2008 WL 4079315, at *4 (E.D. Ark. Aug. 28, 2008).

## IV. Lee's 2018 Rule 60 Motion

In September 2018, Lee filed a motion (Dkt. 1297) claiming that he had obtained new information showing that the government had suppressed favorable evidence at trial, in violation of *Brady v. Maryland*, 373 U.S. 83

11

(1963), and had introduced false or misleading evidence at trial, in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). The allegedly new information consisted of (1) statements from James Wanker that he thought Lee was bluffing when he said he had gone down South and had "wrapped" up some people who "had fucked with him" and thrown "them in the swamp," Tr. 4082-83, and (2) information from a court document in a 1990 court case in which Lee was initially charged with murdering an individual named Joey Wavra but eventually pleaded guilty to robbery. *See* Dkt. 1297, at 17-20.

Lee characterized the motion as a motion to vacate or set aside his sentence under 28 U.S.C. § 2255 or, in the alternative, a motion for relief from judgment under Federal Rule of Civil Procedure 60. In support of his Rule 60 motion for relief from judgment, Lee claimed (Dkt. 1297, at 62-64) that relief was warranted as a result of "fraud," "misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3), or as a result of "fraud on the court," Fed. R. Civ. P. 60(d)(3).

In support of those allegations, Lee relied on the footnote in the government's response to Lee's § 2255 motion in which it had responded to Lee's claim that he received ineffective assistance of counsel because his lawyers failed to object to a court order that prohibited his access to discovery materials. As discussed above, in that footnote ("Footnote 16"), the

12

Appellate Case: 20-2351    Page: 14    Date Filed: 07/10/2020 Entry ID: 4932531

government had stated that months before trial, the government had provided a "huge amount" of discovery, some of which was *Brady* material but most of which was *Jencks* material. Dkt. 1126, at 45 n.16. According to Lee, in Footnote 16, the government perpetrated a fraud in the § 2255 proceedings warranting relief from judgment under Rule 60. Dkt. 1297, at 62-64.

The district court denied the motion. Dkt. 1313. The court concluded that Lee needed to obtain certification from this Court in order to file a successive § 2255 motion raising *Brady* and *Napue* claims based on newly discovered evidence. *Id.* at 14-17. The Court also determined that "[a]ssuming that Lee has properly asserted a Rule 60 motion as opposed to a second or successive habeas petition, he [was] not entitled to relief under either Rule 60(b)(3) or (d)(3)." *Id.* at 18.

The court explained that Footnote 16 did not respond to the "general, unsupported *Brady* allegation" in Lee's § 2255 motion and instead "was in the response to Lee's ineffectiveness claim challenging his trial lawyers' failure to oppose the Government's motion seeking restrictions on his personal discovery access." Dkt. 1313, at 18 n.5. The court concluded that Lee's request for relief under Rule 60(b)(3) was untimely and, in any event, lacked merit because Lee failed to "show by clear and convincing evidence that the Government engaged in fraud or other misconduct and that this conduct prevented [him]

Appellate Case: 20-2351     Page: 15     Date Filed: 07/10/2020 Entry ID: 4932531

from fully and fairly presenting his case." *Id.* at 19 (citation and quotation marks omitted). The court determined that "Lee has not alleged facts to show that the omission of any evidence during his § 2255 proceeding was due to the Government's misconduct or that the Government intentionally misrepresented any facts." *Id.*

Lee applied for a certificate of appealability in this Court. Application, *Lee v. United States*, No. 19-2432 (Sept. 6, 2019). Lee sought a certificate of appealability on two grounds. First, he argued that he was entitled to a certificate of appealability on whether his § 2255 motion raising *Brady* and *Napue* claims based on newly discovered evidence required authorization from this Court to file a successive § 2255 motion. *Id.* at 11-43. Second, he argued that he was entitled to a certificate of appealability on whether the district court erroneously denied him relief under Rule 60. *Id.* at 43-60. He renewed his claim that Footnote 16 contained "false" representations and "perpetrated a fraud that prevented him from fully and fairly litigating his § 2255 motion." *Id.* at 44-45.

This Court denied a certificate of appealability. Order, *Lee v. United States*, No. 19-2432 (8th Cir.) (Nov. 4, 2019). Judge Kelly dissented, stating that, in her view, a certificate of appealability was warranted on whether Lee's

14

*Brady* and *Napue* claims needed to satisfy the gatekeeping provisions for successive § 2255 motions. *Id.* at 1-2.

## V.    Lee's 2020 Rule 60 Motion

In his January 2020 Rule 60 motion, Lee argued that he had obtained two new pieces of information showing that the government had suppressed favorable evidence at trial, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and had introduced false or misleading evidence at trial, in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). The allegedly new information consisted of (1) declarations from Cheyne Kehoe and Kirby Kehoe (Chevie Kehoe's father) stating that Gloria Kehoe was mentally unstable and suffered from paranoid delusions, *see* Dkt. 1363-3, at 9, and Dkt. 1363-4, at 5; and (2) the results of a polygraph examination administered to Paul Humphrey by the Arkansas State Police in January 1997, Dkt. 1363-2, at 9-10.[2] Lee apparently obtained the

---

[2] According to the document, Humphrey answered "no" when asked whether he was present when the Muellers were killed and whether he participated in disposing of the bodies, and the polygraph examiner determined that Humphrey "was essentially untruthful in answering" these questions and that it was the examiner's "opinion" that Humphrey "was involved in the death of the Muellers." Dkt. 1363, at 9-10.

Appellate Case: 20-2351    Page: 17    Date Filed: 07/10/2020 Entry ID: 4932531

polygraph results sometime in July or August 2019 through a state FOIA request to the Arkansas State Police. *See* Dkt. 1374 n.10-11.[3]

Lee did not seek to raise these claims in a § 2255 motion as he did in his 2018 motion. Lee instead only sought relief under Rule 60, which were the alternative grounds asserted in his 2018 motion. Lee specifically sought relief under Rule 60(b)(3), Rule 60(b)(6), Rule 60(d)(1), and Rule 60(d)(3). Lee argued once again that Footnote 16 in the government's § 2255 response demonstrated defects in his § 2255 proceedings. *Compare* Dkt. 1297, at 62-63 (defects alleged in the September 2018 motion), *with* Dkt. 1363, at 69 (defects alleged in the January 2020 motion). Lee specifically claimed (Dkt. 1363, at 69) that the government committed "misconduct" and made "false" representations when it stated—in Footnote 16 (Dkt. 1126, at 45 n.16), in response to the claim by Lee in his § 2255 motion that he received ineffective assistance of counsel because his lawyers failed to object to a pretrial order barring his access to discovery—that the government had provided a "huge"

---

[3] Lee relied on these same declarations in an application in this Court for authorization to file a second or successive § 2255 motion. Application, *Lee v. United States*, No. 19-3576 (8th Cir.) (filed on Dec. 4. 2019 and denied on Jan. 7, 2020). It is not clear why Lee waited until January 2020 to seek additional relief based on these declarations.

Appellate Case: 20-2351     Page: 18     Date Filed: 07/10/2020 Entry ID: 4932531

amount of discovery to Lee months before trial, most of which was *Jencks* material and only a "small amount" of which was Rule 16 or *Brady* material.

The district court denied Lee's motion. Dkt. 1403. The court concluded that if Lee's motion "is considered a successive § 2255 motion, [he] has not properly obtained authorization from the Eighth Circuit to file a successive § 2255 motion and that, regardless, for reasons explained in this Order [he] is not entitled to the relief he seeks under Federal Rule of Civil Procedure 60." *Id.* at 13. The court determined that Lee had to demonstrate there existed defects in his § 2255 proceedings and that those defects warranted relief under Rule 60. *Id.*

First addressing Lee's claim for relief under Rule 60(b)(3), the court determined that the court's ruling on Lee's 2019 Rule 60 motion, which also sought relief under Rule 60(b)(3), provided the applicable "legal framework" under the law-of-the-case doctrine. Dkt. 1403, at 17-18. Applying that framework, the court determined that Lee had not alleged facts warranting relief. *Id.* at 18-19. The court specifically concluded that "the government did not make any representations in Mr. Lee's § 2255 proceedings related to the purportedly new evidence" and Lee "does not offer any evidence that the omission of any evidence was due to the government's misconduct or that the government intentionally misrepresented any facts." *Id.* at 18. The court also

17

determined that "the alleged omission of any evidence did not prevent Mr. Lee from fully and fairly litigating his § 2255 petition." *Id.*

The court then determined that these determinations also precluded relief under the other provisions of Rule 60 invoked by Lee. *See* Dkt. 1403, at 20 (Rule 60(b)(6): "[Lee] has not alleged any facts to support his allegation that the government engaged in misconduct during the § 2255 proceeding."); *id.* at 21 (Rule 60(d)(1): "[Lee] has not alleged or presented evidence sufficient to support his argument that the government has engaged in a 'pattern' of misconduct and continues to do so based on this Court's review of Mr. Lee's filings and the record in this case."); *id.* at 22 (Rule 60(d)(3): "[Lee] has not sufficiently alleged or demonstrated fraud on the court in his § 2255 proceeding based on this Court's review of Mr. Lee's filings and the record in this case.").

## ARGUMENT

No reasonable jurist could disagree with the district court's conclusion that Lee failed to allege or demonstrate a defect in his § 2255 proceedings that could warrant relief under Federal Rule of Civil Procedure 60. Lee is not entitled to a certificate of appealability. Nor is he entitled to certification to file a successive § 2255 motion. Lee does not come close to providing new evidence that would result in a reasonable factfinder concluding he was innocent.

Appellate Case: 20-2351      Page: 20      Date Filed: 07/10/2020 Entry ID: 4932531

## I. Legal Standards

### A. Certificate of Appealability

An appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255 unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate of appealability must "indicate which specific issue or issues satisfy" that showing, 28 U.S.C. § 2253(c)(3). To make a substantial showing of the denial of a constitutional right, an applicant must establish that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see Clay v. Bowersox*, 628 F.3d 996, 998 (8th Cir. 2011) (per curiam) (denying certificate of appealability).

### B. Gatekeeping Restrictions on Successive § 2255 Motions

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, § 105, 110 Stat. 1214, 1220, provides that a "second or successive" § 2255 motion must be certified by the court of appeals to contain:

> (1)   newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no

19

> reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). These gatekeeping requirements for second or successive § 2255 motions are jurisdictional. *See, e.g.*, *United States v. Springer*, 875 F.3d 968, 982 (10th Cir. 2017).

A second-in-time § 2255 motion that raises a *Brady* or *Napue* claim based on newly discovered evidence is a second or successive § 2255 motion that must satisfy the AEDPA's gatekeeping requirements. *Blackman v. Davis*, 909 F.3d 772, 778-79 (5th Cir. 2018); *In re Wogenstahl*, 902 F.3d 621, 626-28 (6th Cir. 2018); *Brown v. Muniz*, 889 F.3d 661, 666-75 (9th Cir. 2018); *In re Pickard*, 681 F.3d 1201, 1205 (10th Cir. 2012); *Quezada v. Smith*, 624 F.3d 514, 522 (2d Cir. 2010); *Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1259-60 (11th Cir. 2009); *Evans v. Smith*, 220 F.3d 306, 322-25 (4th Cir. 2000). The requirements of § 2255(h) do "not bar all newly discovered, second-in-time *Brady* claims," but they limit the *Brady* claims permitted in a second or successive § 2255 motion to those that "prove by clear and convincing evidence a prisoner's innocence." *United States v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011).

Appellate Case: 20-2351    Page: 22    Date Filed: 07/10/2020 Entry ID: 4932531

The AEDPA's gatekeeping provisions also apply to a pleading that, "although labeled a Rule 60(b) motion, is in substance" a second or successive § 2255 motion. *Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005); *see Lee*, 792 F.3d at 1023. A Rule 60 motion that "present[s] [a] new claim[] for relief" from a judgment of conviction will qualify as a second or successive § 2255 motion and therefore will be subject to the AEDPA's gatekeeping provisions. *Gonzalez*, 545 U.S. at 531; *see also id.* at 532 (stating that "[a] motion that seeks to add a new ground for relief . . . will of course qualify"). In contrast, a Rule 60 motion that attacks "some defect in the integrity of the federal habeas proceedings" will not qualify. *Id.* at 532. The Supreme Court has explained that "[f]raud on the federal habeas court is one example of such a defect." *Id.* at 532 n.5.

**II.    No Reasonable Jurist Would Disagree That Lee Failed to Allege or Demonstrate a Defect in the Integrity of His § 2255 Proceedings That Could Support Relief Under Rule 60 and Avoid the Restrictions on Second or Successive § 2255 Motions**

Lee does not allege, let alone demonstrate, a defect in the integrity of his § 2255 proceedings that could support relief under Rule 60 and avoid the gatekeeping restrictions on successive § 2255 motions. To the contrary, Lee relies on the exact same allegations upon which he sought Rule 60 relief in his 2018 Rule 60 motion. This Court denied Lee's application for a certificate of appealability in 2019, and the same result is warranted now. Lee's theories fare no better now than they did earlier.

Appellate Case: 20-2351     Page: 23     Date Filed: 07/10/2020 Entry ID: 4932531

Footnote 16 in the government's response to the § 2255 motion cannot reasonably be construed, as Lee suggests, as a statement about the completeness of the government's *Brady* disclosures. Footnote 16 instead described the discovery the government had turned over months before the start of trial, at a time when the government's discovery production was not complete. The government sought (and obtained) a protective order at that time precisely because it intended to turn over more discovery and did not want Lee to use the additional discovery to endanger witnesses, as he had done with discovery the government had previously disclosed. The government's description of the discovery it had turned over months before trial, before discovery was completed, cannot reasonably be construed as an assertion about the state of discovery years later at the time of the § 2255 proceedings. Lee's attempts to manufacture some sort of defect in the integrity of his § 2255 proceedings fall short.

Accordingly, two different district judges have now rejected Lee's allegation that Footnote 16 in the government's response to the § 2255 motion precipitated a defect in Lee's § 2255 proceedings. Judge Leon Holmes pointed out that "Lee refers to Footnote 16 as being part of the Government's response to his general, unsupported *Brady* allegation," but "Footnote 16 . . . was in the response to Lee's ineffectiveness claim challenging his trial lawyers' failure to

Appellate Case: 20-2351     Page: 24     Date Filed: 07/10/2020 Entry ID: 4932531

oppose the Government's motion seeking restrictions on his personal discovery access." Dkt. 1313, at 18 n.5. Judge Holmes concluded that Lee had "not alleged facts to show that the omission of any evidence during his § 2255 proceeding was due to the Government's misconduct or that the Government intentionally misrepresented any facts." *Id.* at 19. Judge Holmes also determined that Lee had not demonstrated that anything "prevented him from fully and fairly litigating his initial § 2255 claim." *Id.*

Judge Kristine Baker likewise found that "the government did not make any representations in Mr. Lee's § 2255 proceedings related to the purportedly new evidence," and Lee did "not offer any evidence that the omission of any evidence was due to the government's misconduct or that the government intentionally misrepresented any facts." Dkt. 1403, at 18.  Judge Baker further "determine[d] that the alleged omission of any evidence did not prevent Mr. Lee from fully and fairly litigating his § 2255 petition." *Id.* And she concluded that Lee had "not alleged any facts to support his allegation that the government engaged in misconduct during the § 2255 proceeding." *Id.* at 20.

Because Lee neither alleges nor demonstrates any defect in the integrity of his § 2255 proceedings, the claims in the motion, which assert new *Brady* and *Napue* claims attacking his conviction, are cognizable only if Lee obtains authorization from this Court to file a second or successive § 2255 motion. *See*

23

*infra* p. []. Lee belatedly recognizes this requirement and now seeks authorization pursuant to 28 U.S.C. § 2255(h)(1). As discussed below, however, Lee does not come close to demonstrating entitlement to authorization.

**III.** **Lee Is Not Entitled to Certification to File a Second or Successive § 2255 Motion**

When applying § 2255(h)(1)'s gatekeeping provision for clear and convincing evidence of innocence, the court must consider "the evidence as a whole." 28 U.S.C. § 2255(h)(1). Courts have held that this standard "derived from pre-AEDPA decisions of the Supreme Court regarding the reviewability of abusive and procedurally defaulted federal habeas corpus claims," *United States v. MacDonald*, 641 F.3d 596, 610 (4th Cir. 2011), and requires courts to "consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under [evidentiary rules]," *id.* at 612 (citations omitted); *see United States v. Williams*, 790 F.3d 1059, 1077 (10th Cir. 2015). The court "must give due regard to any unreliability of the evidence" and "may have to make some credibility assessments." *MacDonald*, 641 F.3d at 612-13 (citations omitted). Courts have also held that a defendant may not rely on new evidence that he could have discovered earlier with due diligence. *Herrera-Gomez v. United States*, 755 F.3d 142, 147 (2d Cir. 2014) (per curiam).

Appellate Case: 20-2351     Page: 26     Date Filed: 07/10/2020 Entry ID: 4932531

The results of the polygraph examination administered to Paul Humphrey do not at all undermine the evidence establishing that Lee, along with Chevie Kehoe, murdered the Muellers. That evidence included evidence that Kehoe and Lee left Spokane together in January 1996; testimony from Lee's own mother that Lee and Kehoe left her house in Oklahoma on January 10, 1996, the day before the Muellers went missing, and were basically penniless; and voluminous evidence that Kehoe and Lee returned to Spokane a few days later flush with not only cash, but also guns and other property stolen from the Muellers. Lee himself possessed over $1,000 in cash and a unique gun that had been stolen from William Mueller. The paint on Kehoe's car linked him to the murders, as did his possession of a key fitting the handcuff on Mueller's body and the property belonging to the Muellers in storage facilities, which included a gun display case that contained fingerprints from both Lee and Kehoe. Not only that, but both Kehoe and Lee confessed to Gloria Kehoe, and Kehoe separately confessed (and disclosed Lee's involvement) to his brother Cheyne Kehoe.[4] And Lee's statements to acquaintances in Spokane matched the location of the murders and the manner in which they were

_____

[4] Notably, the declaration from Cheyne Kehoe that Lee submitted with his Rule 60 motion does not recant this testimony. *See* Dkt. 1363-3.

25

Appellate Case: 20-2351     Page: 27     Date Filed: 07/10/2020 Entry ID: 4932531

committed and contained information that only the perpetrator would likely know.

The district judge who presided over Lee's trial, Judge G. Thomas Eisele, emphasized that the evidence of Lee's guilt is overwhelming. In denying Lee's § 2255 proceedings, Judge Eisele "outlined some of the evidence linking Kehoe and Lee to the Mueller murders in part to demonstrate the abundance of evidence supporting the guilt phase convictions," and he explained that "[t]hose bare facts alone can not convey the demeanor of the witnesses who testified, the scope and detail of the Government's evidence, or the general overall tenor of the case against Kehoe and Lee." *Lee*, 2008 WL 4079316, at *6. "While the bulk of the evidence at trial related to Kehoe," Judge Eisele explained, "the jury's conclusion that Lee was with Kehoe when the Muellers were murdered and that he participated in the murders was well-founded," and "there was no question about Kehoe and Lee's respective roles: Chevie Kehoe was the ringleader, and Danny Lee was the follower." *Id.* at *7; *see also id.* at *25 ("The evidence in this case overwhelmingly supported the jury's finding of guilt."); *id.* at *53 ("[I]t is clear that [Lee] has failed to demonstrate actual innocence.").

Lee's lack of diligence also counsels against authorization to file a successive § 2255 motion. Lee apparently possessed the information about

26

Humphrey's polygraph examination no later than August 2019, yet he did not seek relief on the basis of that information until January 2020. In fact, Lee did not seek relief until after the first date scheduled for Lee's execution had passed, and yet he filed a separate Rule 60 motion, raising different claims, on the eve of that execution date. *See* Dkt. 1352. Lee's request for authorization to file a successive § 2255 motion should be denied.

## CONCLUSION

The Court should reject Lee's application for a certificate of appealability and for permission to file a second or successive § 2255 motion.

Respectfully submitted,

CODY HILAND
United States Attorney
Eastern District of Arkansas

BRIAN A. RABBITT
Assistant Attorney General

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

July 10, 2020

Appellate Case: 20-2351   Page: 29   Date Filed: 07/10/2020 Entry ID: 4932531

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on July 10, 2020. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. 1260
Washington, D.C. 20530
(202) 307-3766

Appellate Case: 20-2351    Page: 30    Date Filed: 07/10/2020 Entry ID: 4932531