No. 20-2351

In the

# United States Court of Appeals
## for the Eighth Circuit

———————————

DANIEL LEWIS LEE,
Appellant,

v.

UNITED STATES OF AMERICA,
Appellee.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
District Court No. 4:97-CR-243

———————————

**GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR STAY OF EXECUTION**

———————————

CODY HILAND
United States Attorney
Eastern District of Arkansas

JONATHAN D. ROSS
Assistant United States Attorney
Eastern District of Arkansas

BRIAN A. RABBITT
Acting Assistant Attorney General

JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................... 1

LEGAL STANDARD ................................................................................ 2

ARGUMENT ............................................................................................ 3

    I.    Lee Does Not Demonstrate Any Likelihood of Success on the Merits, Let Alone a Strong Likelihood ................................... 4

        A.    Lee Cannot Establish a Defect in the Integrity of the Proceedings That Permits Him to Avoid the Gatekeeping Provisions for Successive § 2255 Motions ....... 4

        B.    Even If Lee Could Avoid the Gatekeeping Provisions, He Cannot Show He Is Entitled to Relief from Judgment Under Rule 60 .................................................. 7

            1.    The Underlying *Brady* and *Napue* Claims Lack Merit.......................................................................... 8

            2.    Lee Does Not Meet Additional Requirements for Relief from Judgment Under Rule 60 ................ 14

    II.    Equitable Considerations, Including Lee's Undue Delay, Weigh Against a Stay ............................................................... 17

CONCLUSION ........................................................................................ 19

CERTIFICATE OF SERVICE ................................................................ 20

Appellate Case: 20-2351    Page: 2    Date Filed: 07/12/2020 Entry ID: 4932686

# INTRODUCTION

This is a capital murder case with a long history. Defendant Daniel Lewis Lee has received extensive review of his conviction and sentence in both this Court and the district court. Among other things, he collaterally attacked his conviction and sentence on numerous grounds in a motion for relief under 28 U.S.C. § 2255, the district court carefully evaluated and denied the motion in an exhaustive opinion, and this Court affirmed. The government is now prepared to carry out Lee's lawful sentence on July 13, 2020.

Lee suggests that a stay is warranted merely because legal proceedings remain pending, but his strategy here is the very sort of "last-minute" and multi-pronged litigation that weighs heavily against a stay of execution. *Gomez v. U.S. Dist. Court for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992) (per curiam); *see Bucklew v. Precythe*, 139 S. Ct. 1112, 1133-34 (2019). Since the district court and this Court rejected Lee's claims for collateral review under § 2255, Lee has filed, by the government's count, four motions for relief from judgment under Federal Rule of Civil Procedure 60, as well as a habeas petition under 28 U.S.C. § 2241. Lee filed one of his Rule 60 motions three calendar days (and one business day) before the first scheduled date of his execution on December 9, 2019. Even after that date had passed, Lee filed another Rule 60 motion, the motion at issue here, on January 29, 2020, even though Lee had obtained the

1

information he needed to file the motion several months earlier, well before the first scheduled date for his execution. After the government set a second date to carry out Lee's execution, Lee filed three additional motions in the district court seeking further relief, including one motion seeking DNA testing that he could have requested as long as 13 years ago, and another motion asking the district court to postpone his execution until March 19, 2021.

Two days ago, the Seventh Circuit denied Lee's motion for a stay pending his appeal from the denial of his § 2241 habeas petition, characterizing Lee's arguments as "frivolous." *Lee v. Watson*, No. 20-2128, Slip Op. 6, 8 (July 10, 2020). This Court should likewise deny a stay here.

## LEGAL STANDARD

A defendant "seeking a stay of execution must satisfy the ordinary requirements for a stay." *United States v. Lee*, 960 F.3d 1023. 1025 (8th Cir. 2020) (citing *Hill v. McDonough*, 547 U.S. 573, 584 (2006)). A stay applicant must demonstrate that he has a strong likelihood of success on the merits, that he is likely to suffer irreparable harm in the absence of a stay, and that the balance of interests (harm to the applicant and the interests of the public) weigh in favor of a stay. *See Nken v. Holder*, 556 U.S. 418, 434-36 (2009). The mere possibility of relief is not enough; the applicant must show that he has a strong likelihood of succeeding on the merits. *Id.* at 434.

2

In the capital context, irreparable injury is taken as established. *See, e.g.*, *Jones v. Hobbs*, 604 F.3d 580, 581-82 (8th Cir. 2010) (per curiam). But the applicant must nonetheless satisfy the other "requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill*, 547 U.S. at 584; *accord Lee v. Hutchinson*, 854 F.3d 978, 981 (8th Cir.) (per curiam), *cert. denied*, 137 S. Ct. 1623 (2017). A court "must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill*, 547 U.S. at 584 (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)); *accord Nooner v. Norris*, 491 F.3d 804, 808 (8th Cir. 2007).

## ARGUMENT

The Court can and should deny Lee's application for a certificate of appealability, for all the reasons discussed in the government's opposition filed on July 10, 2020. But even if this Court were to determine that reasonable jurists could disagree about the denial of Lee's Rule 60 motion, the Court should deny a stay pending an appeal. *See Williams v. Kelley*, 854 F.3d 1002, 1007 (8th Cir. 2017) (per curiam) (concluding that the defendant was not entitled to a stay pending full briefing of his appeal merely because the district court granted a certificate of appealability after denial of the defendant's Rule 60 motion); *Davis v. Kelley*, 855 F.3d 833, 834-36 (8th Cir. 2017) (per curiam)

3

(same). Lee does not demonstrate any likelihood that he will succeed on the merits of his Rule 60 motion, let alone a strong likelihood. And Lee's undue delay, as well as other equitable factors, weigh against a stay.[1]

## I.      Lee Does Not Demonstrate Any Likelihood of Success on the Merits, Let Alone a Strong Likelihood

In order to reopen his § 2255 proceedings and overturn his conviction via the Rule 60 motion at issue in this case, Lee must demonstrate that (1) he attacks a defect in the integrity of his § 2255 proceedings (rather than merely seeking to raise a new claim) and therefore can avoid the gatekeeping provisions for successive § 2255 motions; and (2) he presents a meritorious basis to overturn his conviction via a motion for relief from judgment under Rule 60. *See Williams*, 854 F.3d at 1008. Lee cannot show a strong likelihood of meeting either of those requirements, let alone both of them.

### A.      Lee Cannot Establish a Defect in the Integrity of the Proceedings That Permits Him to Avoid the Gatekeeping Provisions for Successive § 2255 Motions

As discussed in the government's opposition to Lee's application for a certificate of appealability, the only defect that Lee alleges in his § 2255 proceedings is that a footnote in the government's response to his § 2255

---

[1] Lee's filing is styled as a request for a stay pending appeal, but insofar as he also seeks a stay pending certification to file a successive § 2255 motion, the government opposes that stay for the same reasons cited herein.

4

motion misstated the scope of the materials that the government had provided to the defense. But the district court (Holmes, J.) concluded in an earlier Rule 60 motion by Lee that the same footnote created no defect in Lee's § 2255 proceedings and denied a certificate of appealability; this Court likewise denied a certificate appealability; and then the district court (Baker, J.) again concluded that the same footnote created no defect in Lee's § 2255 proceedings and denied a certificate of appealability. Lee's renewed arguments about the footnote continue to lack merit. At a minimum, the repeated rejection of Lee's argument demonstrates that he cannot show a strong likelihood of succeeding on the merits.

Lee attempts (Stay Motion 4-5) to supplement his argument that the government created a defect in the integrity of his § 2255 proceedings by asserting that, in addition to the disclosure-related footnote in the government's response to Lee's § 2255 motion, the government also stated, in in response to co-defendant Chevie Kehoe's § 2255 motion, that "[a]ll documents relating to Mr. Humphrey were provided to trial counsel." Dkt. 1087, at 32. A statement in Kehoe's § 2255 proceedings, however, cannot create a defect in *Lee's* § 2255 proceedings. And in any event, insofar as the government stated in response to Kehoe's § 2255 motion that it had turned over all documents relating to Humphrey, the government implicitly meant

5

Appellate Case: 20-2351     Page: 7     Date Filed: 07/12/2020 Entry ID: 4932686

that it had turned over documents in its possession, and Lee provides no basis to conclude that federal prosecutors possessed or were aware of the polygraph examination conducted by state investigators months before the federal government took the lead in investigating the Mueller murders. *See infra* pp. 13-14. Lee therefore provides no basis to conclude that the government's statement in response to Kehoe's § 2255 motion was false or that the government engaged in misconduct. Notably, the government's statement in Kehoe's § 2255 proceedings was made in response to a claim by Kehoe that his lawyers were ineffective because they failed to adequately investigate Paul Humphrey to tie Humphrey to the Mueller murders, Dkt. 118, at 31-33; it was not a response to a request for *Brady* materials or to a claim that the government failed to turn over *Brady* material. But even if the statement could be construed as a statement about the completeness of the government's *Brady* disclosures, as discussed below, the Humphrey polygraph results do not qualify as *Brady* material. For all these reasons, Lee does not present a strong likelihood that the government's brief in response to *Kehoe's* § 2255 motion created a defect in the integrity of *Lee's* § 2255 proceedings.

6

**B.     Even If Lee Could Avoid the Gatekeeping Provisions, He Cannot Show He Is Entitled to Relief from Judgment Under Rule 60**

Because Lee's motion, as discussed above and in the government's response to Lee's application for a certificate of appealability, does not allege a defect in the integrity of his § 2255 proceedings, the motion instead is merely a successive § 2255 motion raising new *Brady* and *Napue* claims, and therefore the motion is barred by the gatekeeping restrictions for successive § 2255 motions. *See* 28 U.S.C. § 2255(h). And given that three different district judges have found that the evidence of Lee's guilt is overwhelming, he could not satisfy § 2255's even more demanding standard for a successive motion, which requires "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." 28 U.S.C. § 2255(h)(1). For that reason alone, Lee cannot demonstrate a likelihood of success on the merits. *See Williams*, 854 F.3d at 1008.

Independently, even if his motion were not subject to those gatekeeping provisions, Lee nonetheless cannot show a strong likelihood of success on his request to overturn his conviction under Rule 60 because he cannot show that

7

the underlying *Brady* and *Napue* claims possess merit or that Rule 60 provides a viable vehicle to reopen his § 2255 proceedings to raise those claims. *See id.*

### 1. The Underlying *Brady* and *Napue* Claims Lack Merit

To establish a *Brady* claim, a defendant "must establish that (1) the government suppressed evidence; (2) the evidence was favorable to him; and (3) the evidence was material to the outcome of the trial." *United States v. Garrett*, 898 F.3d 811, 816 (8th Cir. 2018). To establish a *Napue* claim, a defendant "must show that: (1) the prosecution used perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a 'reasonable likelihood' that the perjured testimony could have affected the jury's judgment." *United States v. Martin*, 59 F.3d 767, 770 (8th Cir. 1995). Lee does not even attempt to demonstrate in his stay application that he can make these showings and establish a meritorious *Brady* or *Napue* claim, and the Court should deny the stay motion for that failure alone. Regardless, even if Lee had attempted to show a strong likelihood of establishing a meritorious *Brady* or *Napue* claim, he would have failed.

1. To establish materiality under *Brady*, the defendant must show that there is a reasonable probability that the outcome of the trial would have been different had the alleged *Brady* evidence been disclosed. *See, e.g.*, *United States v. Sanchez-Florez*, 533 F.3d 938, 941 (8th Cir. 2008). Evidence is material under

Appellate Case: 20-2351    Page: 10    Date Filed: 07/12/2020 Entry ID: 4932686

*Brady* only if it was admissible at the defendant's trial or could lead to admissible evidence.

The Humphrey polygraph results were not material under *Brady* because they were inadmissible at Lee's trial. At the time of Lee's trial, this Court adhered to "the rule that polygraph examination results should not be admitted absent stipulation." *Anderson v. United States*, 788 F.2d 517, 519 n.1 (8th Cir. 1986); *see United States v. Gordon*, 688 F.2d 42, 44 (8th Cir. 1982); *United States v. Alexander*, 526 F.2d 161, 166 (8th Cir. 1975). The same year as Lee's trial, this Court observed that polygraph results "clearly are not admissible in this circuit." *United States v. Iron Cloud*, 171 F.3d 587, 591 (8th Cir. 1999). The law in this Circuit at the time of Lee's trial was therefore analogous to the law that applied at the defendant's trial in *Wood v. Bartholomew*, 516 U.S. 1 (1995) (per curiam), where the Supreme Court held that the prosecution's failure to turn over the results of a polygraph examination of a key witness did not violate *Brady* because the polygraph results were inadmissible at the defendant's trial under state law. *Id.* at 6.

This Court has more recently stated that "there is no per se ban on the use of polygraph evidence in this circuit," even though it remains "'disfavored.'" *United States v. Montgomery*, 635 F.3d 1074, 1094 (8th Cir. 2011); *see also United States v. Scheffer*, 523 U.S. 303, 311 (1998) (without

9

referring to the Eighth Circuit, noting that some circuits had "abandoned the per se rule excluding polygraph evidence" but at least one circuit had "recently reaffirmed its per se ban"). But even in courts without a per se ban, polygraph results are almost always inadmissible, at a minimum under Federal Rule of Evidence 403. *See, e.g.*, *United States v. Rodriguez-Berrios*, 573 F.3d 55, 73 (1st Cir. 2009) ("Polygraph results are rarely admissible at trial."); *United States v. Thomas*, 167 F.3d 299, 309 (6th Cir. 1999) ("We have repeatedly held that unilaterally obtained polygraph evidence is almost never admissible under Evidence Rule 403.") (citation and quotation marks omitted). The Humphrey polygraph results therefore would have been inadmissible at Lee's trial even under this Court's more recent precedent.[2]

2. Even if the Humphrey polygraph results were admissible at Lee's trial, multiple district judges who have handled proceedings in Lee's case have correctly concluded that the evidence overwhelmingly establishes Lee's culpability for murdering the Muellers, and those determinations compel the

---

[2] Lee cites (Stay Motion 4) *United States v. Nelson*, 970 F.2d 439 (8th Cir. 1992), but in that case, a witness made statements during a polygraph examination that contradicted his statements at trial. *Id.* at 441-42. *Nelson* does not apply *Brady* to the results of a polygraph examination, *i.e.*, the examiner's opinion whether the subject truthfully answered the examiner's questions.

Appellate Case: 20-2351    Page: 12    Date Filed: 07/12/2020 Entry ID: 4932686

conclusion that there is no reasonable possibility that the polygraph results would have resulted in Lee's acquittal.

The overwhelming evidence of guilt included, but was not limited to, evidence showing that Kehoe and Lee left Spokane, Washington, in January 1996, telling others they were going to Idaho to build a barn. Tr. 2778-79. Lee's mother testified that Kehoe and Lee instead traveled south, visiting her in Yukon, Oklahoma, Tr. 2617-20, and they left her house at around 6 p.m. on January 10, 1996, Tr. 2618-19, 2633, the day before the Muellers went missing, *see* Dkt. 1367, at 58-59 (cataloguing some of the evidence establishing that the Muellers went missing on January 11, 1996). According to Lee's mother, when Lee and Kehoe left her house in Oklahoma on January 10, 1996, they were "short on cash," and she even had to lend them about $40 despite her "very limited income." Tr. 2619-20. But the evidence established that when Kehoe and Lee returned to Spokane two or three days after the Muellers went missing, they were flush with cash and possessed property stolen from the Muellers. *See, e.g.*, Tr. 2779-82, 2892-96, 2900-01, 2916, 3710. Lee specifically possessed about $1,500 in cash, as well as a unique firearm that had been modified to William Mueller's specifications. Tr. 2779-80, 2559-61.

Chevie Kehoe's mother (Gloria Kehoe) testified that Kehoe and Lee separately confessed to her that they killed the Muellers. *Lee*, 2008 WL

11

Appellate Case: 20-2351     Page: 13     Date Filed: 07/12/2020 Entry ID: 4932686

4079315, at *4. Cheyne Kehoe also testified that Kehoe confessed to him and revealed Lee's participation. *Id.* at *5-*6. Lee told acquaintances in Spokane that he had taken a trip "down south" and that some people "had fucked with him and so he wrapped them up, taped them, and [threw] them in the swamp," Tr. 4082-83; *see also id.* at 4093 (similar statements to Wanker's wife), which was consistent with the location of the murders (the South, namely Arkansas), the location where the bodies were found (the Illinois Bayou, akin to a swamp), and the state of the bodies when they were found (with plastic bags wrapped around their heads with duct tape), *see Lee*, 2009 WL 4079315, at *5. The paint on Kehoe's car matched paint chips on duct tape removed from the bodies of the Mueller family. *Id.* at *6. When Kehoe was apprehended, he was found in possession of property belonging to William Mueller and a key that opened the handcuffs on Mueller's body. Tr. 3218-19, 3265-67, 3275-3311, 3565; *see United States v. Kehoe*, 310 F.3d 579, 585 (8th Cir. 2002). And investigators searched storage units used by Kehoe and found more Mueller property, including a gun display table that contained Kehoe's and Lee's fingerprints. Tr. 2479, 3378-3403, 3479, 3489, 3610-28, 3650, 3710.

The judge who presided over the trial and Lee's § 2255 proceedings repeatedly emphasized the overwhelming evidence establishing Lee's guilt. *See United States v. Lee*, No. 97-CR-243, 2008 WL 4079315, at *6-*7, *25, *53

12

(E.D. Ark. Aug. 28, 2008). Subsequent judges who have presided over the case and reviewed the record have agreed. *See, e.g.*, Dkt. 1313, at 13 (describing the "evidence of Lee's guilt" as "overwhelming") (Holmes, J.). Just yesterday, the district judge most recently assigned to this case concluded that "[t]he evidence against Mr. Lee remains overwhelming today." Dkt. 1428, at 16. And the district court specifically concluded that it did "not believe that the polygraph results alter the overwhelming evidence of Mr. Lee's guilt." *Id.* at 6-7 n.6. Lee cannot show a strong likelihood that there is a reasonable probability the Humphrey polygraph would have changed the outcome of his trial.

3. Not only can Lee not show that the Humphrey polygraph results were material under *Brady*, he also cannot show that the government suppressed the polygraph results. Prosecutors have the obligation to disclose favorable, material evidence within their own files, *United States v. Agurs*, 427 U.S. 97, 110 (1976), as well as such "evidence known to the others acting on the government's behalf in the case," *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), which is sometimes referred to as the "prosecution team," *see, e.g.*, *Avila v. Quarterman*, 560 F.3d 299, 307 (5th Cir. 2009). In a federal prosecution, state and local law enforcement officers are not necessarily a part of the prosecution team merely because they investigated the same criminal episode. *See, e.g.*, *United States v. Kern*, 12 F.3d 122, 126 (8th Cir. 1993) (knowledge of

13

investigative report by Omaha police not imputed to federal prosecutors). By Lee's own account (Dkt. 1363, at 46), federal authorities took over the investigation of the Mueller murders in June 1997, when Cheyne Kehoe turned himself in to federal authorities, but the polygraph examination was administered to Humphrey by the Arkansas State Police in January 1997. *See* Dkt. 1363-2, at 9. Lee provides no basis to conclude that federal prosecutors or investigators possessed or knew about the Humphrey polygraph examination.

4. Lee's *Napue* claim is likewise meritless. Lee appears to suggest that the government knowingly presented perjured testimony when Lee called Humphrey as a witness at trial, the government asked Humphrey on cross-examination whether he was involved in the Mueller murders, and Humphrey answered no. The government did not and does not have a basis to conclude that Humphrey was involved in the Mueller murders. To the contrary, the voluminous evidence establishes that Kehoe and Lee committed the murders. Lee's contention that the government knowingly presented perjured testimony is frivolous.

### 2. Lee Does Not Meet Additional Requirements for Relief from Judgment Under Rule 60

Lee cannot show a strong likelihood of success warranting a stay not only because he has not demonstrated a likely meritorious *Brady* or *Napue* claim, but also for the independent reason that he cannot show a substantial

Appellate Case: 20-2351     Page: 16     Date Filed: 07/12/2020 Entry ID: 4932686

likelihood that he is entitled to relief from judgment under Rule 60. Lee

purported to seek relief from judgment under Rules 60(b)(3), 60(b)(6), 60(d)(1),

and 60(d)(3), but in his stay motion he only relies on Rules 60(b)(3) and

60(b)(6). But Lee fails to demonstrate a strong likelihood that he can obtain

relief under any of those provisions. *See* Dkt. 1367, at 42-56 (explaining why

Lee is not entitled to relief from judgment under any of the provisions he

invokes).

To start, Lee's motion is untimely insofar as he seeks relief under Rule

60(b)(3) because it was filed more than a year after entry of judgment. Fed. R.

Civ. P. 60(c)(1); *see* Dkt. 1367, at 46. Lee argues that he is entitled to equitable

tolling, but a Rule 60(b)(3) motion "must be denied as untimely if made more

than one year after judgment regardless of whether the delay was reasonable."

11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2866 (3d ed.

2018). A district court "must not extend" this one-year limitation, Fed. R. Civ.

P. 6(b)(2), and therefore a court does not "have any power to enlarge the time

limits of the rule," Wright et al., *supra*, § 2866. Although the district court did

not rule on this ground and instead concluded that Lee was not entitled to

relief under Rule 60(b)(3), the untimeliness of Lee's motion alone precludes

him from establishing a strong likelihood of success on the merits.

Appellate Case: 20-2351     Page: 17     Date Filed: 07/12/2020 Entry ID: 4932686

Lee's motion is also untimely insofar as he seeks relief under Rule 60(b)(6) because Lee's motion was not "made within a reasonable time." Fed. R. Civ. P. 60(c)(1). Lee does not explain why he apparently waited until after the government first set an execution date to request FOIA information from the Arkansas State Police, nor does he explain why he waited approximately six months after he obtained that information to file his Rule 60 motion. Lee also cannot demonstrate "extraordinary circumstances" warranting relief under Rule 60(b)(6). Insofar as Lee claims (albeit incorrectly, as the district court concluded) that the government engaged in misconduct and made misrepresentations that are cognizable under Rule 60(b)(3), he cannot alternatively assert those claims as grounds for relief under Rule 60(b)(6). A movant can seek relief under Rule 60(b)(6) only if "the motion . . . is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)"; otherwise a party could use Rule 60(b)(6) "to circumvent the 1-year limitations period that applies to" clauses (b)(1) through (b)(3). *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 & n.11 (1988). Lee's efforts to rely on both Rules 60(b)(3) and 60(b)(6) is therefore invalid.

Thus, aside from the lack of merit of the underlying *Brady* and *Napue* claims, Rule 60 also does not provide a viable vehicle to raise those claims. For

Appellate Case: 20-2351    Page: 18    Date Filed: 07/12/2020 Entry ID: 4932686

that reason, as well, Lee cannot establish a strong likelihood of success on the merits.

## II. Equitable Considerations, Including Lee's Undue Delay, Weigh Against a Stay

The Supreme Court has explained that "[a] court considering a stay must . . . apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill*, 547 U.S. at 584 (quoting *Nelson*, 541 U.S. at 650); *see, e.g.*, *Gomez*, 503 U.S. at 653. In particular, the "last-minute nature of an application" is a sufficient justification for denying "an application to stay execution" where the "claim could have been brought [years] ago." *Id.*

Lee effectively acknowledges that he did not file his motion expeditiously. Lee's representation that he filed his Rule 60 motion within six months of obtaining the Humphrey polygraph results from the Arkansas State Police through an Arkansas Freedom of Information Act request (see Dkt. 1374 n.10-11; Stay Motion 14) indicates that he obtained the information in late July or early August 2019. Lee does not explain why he nevertheless waited six months to file his motion. In fact, Lee filed a separate Rule 60 motion raising different claims on December 6, 2019, three calendar days before his then-scheduled execution. Dkt. 1352. Lee does not explain why he

17

asserted the claims in that motion but not also claims based on the Humphrey polygraph material. Nor does Lee explain his delay in seeking a stay after the district court denied the motion on July 2, 2020. Lee filed a notice of appeal that same day, but he did not request a certificate of appealability in this Court until July 9, 2020. And Lee did not seek a stay of his execution until shortly before midnight on July 11, 2020, approximately 40 hours before the time his execution is scheduled. Lee's repeated delays weigh against a stay.

The Supreme Court has repeatedly emphasized that "'[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of a sentence.'" *Bucklew*, 139 S. Ct. at 1133 (quoting *Hill*, 547 U.S. at 584); *see, e.g.*, *Nelson*, 541 U.S. at 650 (describing "the State's significant interest in enforcing its criminal judgments"); *Gomez*, 503 U.S. at 654 (noting that "[e]quity must take into consideration the State's strong interest in proceeding with its judgment"). That interest is "magnified by the heinous nature of the offenses committed by [Lee]." *In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 127 (D.C. Cir. 2020) (Katsas, J., concurring). It bears repeating that Lee and Kehoe "overpowered and incapacitated" William and Nancy Mueller and then shot the Muellers and their eight-year-old daughter Sarah Powell "with a stun gun, placed plastic bags over their heads, and sealed the bags with duct tape," and then drove the

Appellate Case: 20-2351     Page: 20     Date Filed: 07/12/2020 Entry ID: 4932686

family to the Illinois Bayou where they "taped rocks onto them and threw them into the" water to suffocate or drown. *United States v. Lee*, 374 F.3d 637, 642 (8th Cir. 2004). Lee has already pursued direct review, three rounds of collateral review in the district court and in this Court, as well as a further round of collateral review in the district court in Indiana and the Seventh Circuit. The time has come for his sentence to be carried out.

## CONCLUSION

The Court should reject Lee's motion for a stay of his execution.

Respectfully submitted,

CODY HILAND
United States Attorney
Eastern District of Arkansas

JONATHAN D. ROSS
Assistant United States Attorney
Eastern District of Arkansas

BRIAN A. RABBITT
Acting Assistant Attorney General

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

July 12, 2020

Appellate Case: 20-2351    Page: 21    Date Filed: 07/12/2020 Entry ID: 4932686

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on July 12, 2020. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. 1260
Washington, D.C. 20530
(202) 307-3766

20